IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


DALE HAYDEN                                                                          PLAINTIFF


VS.                                          CASE NO. 08-CV-4050


NEVADA COUNTY, ARKANSAS;
ABB MORMON INDIVIDUALLY AND
AS SHERIFF OF NEVADA COUNTY,
ARKANSAS.                                                                           DEFENDANTS


**MEMORANDUM OPINION**

Before the Court is separate Defendants Nevada County, Arkansas and Abb Mormon's

Motion for Summary Judgment.  (Doc. 35).  Plaintiff has responded to the motion.  (Doc. 39).

The Court finds the matter ripe for consideration.

BACKGROUND

Plaintiff Dale Hayden claims that Defendant Abb Mormon, former Sheriff of Nevada

County, Arkansas, violated his constitutional rights by coercing him into accepting a plea

agreement for the charge of terroristic threatening in the first degree, a crime Hayden says he did

not commit.  Hayden further alleges that this coercion took place even though Defendant

Mormon was aware of his prior mental illness and incompetence.  Hayden makes these claims

against Defendant Mormon in his official capacity as sheriff and also in his individual capacity.

On January 1, 1989, Hayden was arrested in Nevada County and was charged with

terroristic threatening in the first degree.  He was held in custody for approximately 180 days and

was sent to the Arkansas State Hospital for a mental evaluation.  In November of 1989, Hayden

was deemed competent to stand trial and was returned to the Nevada County Jail.  He alleges that

one month later, in December 1989, Defendant Mormon informed him that if he plead guilty to

the charge of terroristic threatening he would only receive two years of probation with no fine

and be released from custody.  Hayden claims he did not understand the charges or plea

agreements due to his mental illness.  Hayden also claims that he informed Mormon on many

occasions that he was mentally ill and that this was a fact the Mormon had been aware of since at

least January 1989.  On December 21, 1989, Hayden plead guilty to terroristic threatening in the

first degree.  Danny Rogers, Nevada County deputy prosecuting attorney, accepted Plaintiff's

plea and recommended a sentence of five years probation with a $500 fine.  This

recommendation was accepted.

In April 1992, Hayden was arrested and convicted of disorderly conduct and harassing

communications.  His probation was revoked as a result of this conviction.  Hayden was

sentenced to five years imprisonment.  He served nineteen months of this sentence.

In December 2006, the Nevada County Circuit Court dismissed Hayden's 1989 charge of

terroristic threatening.  This dismissal was in response to Hayden's Petition for Writ of Error

Coram Nobis to Set Aside Guilty Plea.  The circuit court held that Hayden was not competent to

understand his plea agreement in December 1989.

Subsequently, Hayden brought this action, pursuant to 42 U.S.C. §1983, against

Defendant Mormon in his individual and official capacity, as well as Nevada County.  He alleges

that Defendant Mormon violated his due process rights by coercing him into a plea agreement

that Mormon knew he did not have the mental ability to understand.  Furthermore, Hayden

alleges that training and disciplinary customs and policies of Nevada County were the underlying cause of this due process violation.  Hayden also makes various state tort claims against these Defendants.  Plaintiff seeks declaratory and injunctive relief as well as two million dollars in monetary damages.  Defendants move for summary judgment as a matter of law.

## STANDARD OF REVIEW

Summary Judgement is proper if there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law.  *See* Fed.R.Civ.P. 56(b).  The Court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the non-moving party.  *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996); *see also Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992).  The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  *Enterprise Bank*, 92 F.3d at 747; *see also Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The non-moving party must demonstrate the existence of specific facts that create a genuine issue for trial; mere allegations or denials are not enough.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party.  See *Liberty Lobby*, 477 U.S. at 250.

## DISCUSSION

Hayden brings this suit under 42 U.S.C. §1983. Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and law."  42 U.S.C. §1983.  Therefore, a §1983 plaintiff

must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003) (quoting *Shrum v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)).  In this case, Hayden alleges both due process and equal protection violations.

### I.  Defendant Abb Mormon in his individual capacity

Defendant Abb Mormon contends that he is entitled to qualified immunity from this suit in his individual capacity.  Under qualified immunity, state actors are protected from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  At the summary judgment phase, the qualified immunity inquiry is a three-step process.  The first question is whether the plaintiff has asserted a violation of a constitutional or statutory right.  If so, the next question is whether or not the right asserted was clearly established at the time of the violation. The final question is whether, viewing the facts in the light most favorable to the plaintiff, there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right.  *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000).

First, the Court must decide if the facts alleged, taken in the light most favorable to Hayden, demonstrate a violation of a federal constitutional or statutory right.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  In this case, the charges against Hayden stemming from his 1989 arrest were dismissed on November 6, 2006 due to the Nevada County Circuit Court's finding that he was not competent to understand the proceeding against him at the time he entered his

4

guilty plea.  Therefore, Hayden has adequately asserted a violation of his constitutional right to be free from criminal prosecution while incompetent.

The next question is whether or not the right asserted was clearly established at the time of the violation.  It is a well established matter of Constitutional law that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.  Thus, Hayden has asserted a clearly established right in this case.

The final question is whether a reasonable official would have known that their actions violated this clearly established constitutional right.  The qualified immunity standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 520 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).  This room for reasonable error exists because "officials should not err always on the side of caution" for fear of being sued.  *Davis v. Scherer*, 468 U.S. 183, 196 (1984).

In this case, Hayden claims that Defendant Abb Mormom knew of Plaintiff's mental illness and took advantage of this impairment by encouraging Hayden to plead guilty.  He contends that it was well known around Prescott that he had a mental disability, and that "no public official could not have known of this fact."  *See* Affidavit of Dale Hayden, Doc. 39-5.  Hayden also states that, after his arrest, he and various members of his family informed Defendant Mormon that he was incompetent.

Construing the facts in the light most favorable to Plaintiff Dale Hayden and presuming that Mormon had knowledge of Hayden's past mental health issues and that he convinced Hayden to plead guilty, Hayden's claims against Mormon in his individual capacity cannot

withstand summary judgment.  While knowingly attempting to convince the legally incompetent to plead guilty is certainly a constitutional violation, the Court disagrees that a reasonable person in Mormon's position would have known they were committing such a violation.

When Defendant Mormon told Hayden in December 1989 that he should plead guilty to the terroristic threatening charges, the appointed psychologist from the Arkansas State Hospital had already concluded that Hayden was competent to stand trial and able to understand the charges that had been brought against him.  Knowledge of past mental health issues and claims of incompetency by an incarcerated individual and their family would not cause a reasonable person to disregard or act contrary to the official findings of a state appointed psychological expert.  Law enforcement officials should be able to act in reliance on these types of expert opinions; they should not be forced to make a separate diagnosis of an individual's mental health.  To hold otherwise would cause law enforcement to act with a burdensome amount of caution for fear of being sued.  This is precisely what qualified immunity seeks to prevent.

Therefore, while Defendant Mormon may have given Hayden unsolicited legal advice and encouraged him to plead guilty, in light of the psychologist's finding of mental competency, no reasonable person would have known that this action would be in violation of Hayden's constitutional right to due process.  That the psychologists findings were overturned by the Nevada County Circuit Court seventeen years later does not change the fact that Defendant Mormon was acting reasonably upon the information he was given in 1989.  Therefore, Defendant Abb Mormon is entitled to qualified immunity and all claims against him in his individual capacity should be dismissed as a matter of law.

## II. Defendant Nevada County and Defendant Abb Mormon in his official capacity

In addition to bringing suit against Defendant Abb Mormon in his individual capacity, Plaintiff Hayden also brings §1983 claims against Nevada County and Defendant Mormon in his official capacity as sheriff.  The "real party in interest in an official-capacity suit is the governmental entity and not the named official." *Robb v. Hungerbeeler*, 370 F.3d 735, 739 (8th Cir. 2004).  Thus, an official-capacity suit is treated as a suit against the governmental entity. *Id.* Because the claims against Nevada County and individual Defendant Mormom are the same, the Court's analysis in this section applies to both parties.

In a 42 U.S.C. §1983 suit against a municipality, the Court must determine two issues: (1) whether a plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000).  A city is responsible for a constitutional violation when a municipal custom or policy causes the violation. *Id*. at 432.

First, the Court must decide if the facts alleged, taken in the light most favorable to Plaintiff Hayden, demonstrate a violation of a constitutional right that caused harm.  As discussed previously, Hayden has adequately asserted a violation of his constitutional right to be free from criminal prosecution while incompetent.  Plaintiff maintains that this violation, which lead to his guilty plea, probation, and, later, thirty-two months of incarceration, caused him long term mental and physical pain, deprived him of his liberty, and deprived him of his property rights.  Assuming that Plaintiff would be able to show evidence to prove this harm, the first element of this cause of action is satisfied.

Second, the Court must determine whether a municipal custom or policy caused the

7

violation.  Here, Hayden claims that a lack of training by the county resulted in the violation of his constitutional rights.  A local government may be subject to § 1983 liability for failure to training its police officers if the failure to train "reflects a deliberate or conscious choice by the county." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  However, the need for different or additional training must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." *Id.*

Construing the facts in the light most favorable to Plaintiff and presuming that Mormon had knowledge of Hayden's past mental health issues and that he convinced Hayden to plead guilty, Hayden's claims against Nevada County and individual Defendant Mormon in his official capacity cannot withstand summary judgment.  Discovery has closed, and Plaintiff has had adequate opportunity to investigate the training and disciplinary policies of Nevada County.  A conclusory statement alleging a lack of training is simply not sufficient to create a genuine issue of fact.  Furthermore, given that the Court has granted summary judgment in favor of Defendant Mormom in his individual capacity because he could not have known he was committing a constitutional violation when he allegedly spoke to Plaintiff, it logically follows that a need for better training would not have been readily apparent to Nevada County at the time.  Therefore, Plaintiff's §1983 claims against Nevada County and Mormon in his official capacity should be dismissed as a matter of law.

## CONCLUSION

Based upon the foregoing, the Court finds that Nevada County and Defendant Abb Mormon in his individual and official capacities are entitled to summary judgment on Plaintiff's

§1983 claims.  Therefore, Defendants' Motion for Summary Judgment on the basis of qualified

immunity and as a matter of law should be and hereby is **granted**.  The remaining tort claims

under Arkansas state law are dismissed without prejudice.  A judgment of even date, consistent

with this opinion, will be issued.

IT IS SO ORDERED, this 30th day of August, 2010.


 /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge